M. Anderson Berry (SBN 262879)
Gregory Haroutunian (SBN 330263)
Brandon P. Jack (SBN 325584)
**EMERY REDDY, PC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
Phone: 916.823.6955
*anderson@emeryreddy.com*
*gregory@emeryreddy.com*
*brandon@emeryreddy.com*

Jason T. Dennett (*pro hac vice* forthcoming)
**MILBERG, PLLC**
1700 7th Avenue, Suite 2100
Seattle, WA 98101
Telephone: (516) 515-9124
*jdennett@milberg.com*

*[additional Plaintiffs' Counsel listed on signature page]*

*Attorney for Plaintiffs and the Proposed Class*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT BRODBECK and AJANI HOFFERT, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>FABLETICS, INC.,<br><br>Defendant | Case No.<br><br>**CLASS ACTION COMPLAINT FOR DAMAGES**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs Robert Brodbeck and Ajani Hoffert ("Plaintiffs") on their own behalf and on behalf and all others similarly situated, by and through counsel,

-1-
PLAINTIFFS' CLASS ACTION COMPLAINT FOR DAMAGES

brings this action against Defendants Fabletics, Inc. ("Fabletics"). The allegations contained herein, which are based on Plaintiffs' knowledge of facts pertaining to himself and his own actions and counsels' investigations, and upon information and belief as to all other matters, are as follows:

## NATURE OF THE CASE

1. This class action arises from Fabletics' retention of windfall profits generated by unlawful tariffs imposed by the federal government under the International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. § 1701, *et seq.*

2. Beginning in February 2025, the federal government imposed sweeping tariffs on imports from numerous countries under purported authority of the IEEPA. Those tariffs dramatically increased the cost of imported consumer goods sold in the United States.

3. Major U.S. importers—including Fabletics—responded by increasing prices on consumer goods to offset the cost of these tariffs. As a result, American consumers paid higher retail prices for consumer goods reflecting the economic burden of those tariffs.

4. Fabletics charged a separate tariff surcharge that was visible on customers' receipts.

5. On February 20, 2026, the Supreme Court of the United States held that the IEEPA-based tariffs were unlawful. *Learning Resources, Inc. v. Trump*, 607 U.S. ___ (2026).

6. As a consequence of that decision, importers who paid those tariffs—including Fabletics—became entitled to refunds of the duties they previously paid to U.S. Customs and Border Protection ("CBP").

PLAINTIFFS' CLASS ACTION COMPLAINT FOR DAMAGES

7. Fabletics therefore collected the tariff costs from consumers through its tariff surcharge, while seeking refunds of the same tariff payments from the federal government.

8. Unless restrained by this Court, Fabletics stands to recover the same tariff payments twice—once from consumers and again from the federal government through tariff refunds, including interest paid by the government on those funds.

9. Fabletics has made no legally binding commitment to return tariff-related surcharges to the consumers who actually paid them.

10. This lawsuit seeks to prevent that unjust result.

11. Plaintiffs bring this action on behalf of millions of consumers who purchased goods from Fabletics during the tariff period and who paid tariff surcharges reflecting Fabletics' pass-through of unlawful tariffs.

12. Plaintiffs seek restitution of those tariff overcharges, together with appropriate declaratory, injunctive, and monetary relief.

## JURISDICTION AND VENUE

13. Federal subject-matter jurisdiction exists under 28 U.S.C. § 1332(d)(2) because: (a) at least one member of the class is a citizen of a state different from Defendant, (b) the amount in controversy exceeds $5,000,000, exclusive of interests and costs, and (c) none of the exceptions under that subsection apply to this action.

14. The Court has personal jurisdiction over Defendant because Fabletics is headquartered in this district, conducts significant business transactions in this District, and because the wrongful conduct occurred in and emanated from this District.

PLAINTIFFS' CLASS ACTION COMPLAINT FOR DAMAGES

15. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant's principal place of business in located in in this District in El Segundo, California, and a substantial portion of the events and conduct giving rise to the claims occurred in this District.

## PARTIES

16. Plaintiff Robert Brodbeck is a resident and citizen of Cincinnati, Ohio. During the Class Period, Plaintiff Brodbeck purchased goods from Fabletics that were imported from countries subject to the IEEPA tariffs. Plaintiff Brodbeck paid retail prices for those goods that were increased by Fabletics' tariff surcharge to account for the tariffs imposed on imported products. Plaintiff Brodbeck would not have paid those higher prices, absent the unlawful tariffs and Fabletics' pass-through of those tariffs to consumers.

17. Plaintiff Ajani Hoffert is a resident and citizen of Fair Oaks, California. During the Class Period, Plaintiff Hoffert purchased goods from Fabletics that were imported from countries subject to the IEEPA tariffs. Plaintiff Hoffert paid retail prices for those goods that were increased by Fabletics' tariff surcharge to account for the tariffs imposed on imported products. Plaintiff Hoffert would not have paid those higher prices absent the unlawful tariffs and Fabletics' pass-through of those tariffs to consumers.

18. Defendant Fabletics, Inc. is a Delaware corporation with its principal place of business located at 800 Apollo Street, El Segundo, CA 90245. Fabletics is responsible for the marketing, distribution, and sale of its products in the United States. A significant portion of the products Fabletics sells are imported goods subject to IEEPA tariffs imposed by the United States government.

///

///

-4-
PLAINTIFFS' CLASS ACTION COMPLAINT FOR DAMAGES

## FACTUAL BACKGROUND

**A.   FABLETICS' BUSINESS**

19.   Fabletics, founded in 2013, is a prominent player in the activewear and sportswear industry, specializing in affordable, high-quality apparel for both men and women.[1]

20.   Fabletics operates on a membership-based model, delivering personalized outfits to millions of customers worldwide. Fabletics boasts of having more than 2.4 million members worldwide.[2]

21.   With headquarters in El Segundo, California, Fabletics combines a strong e-commerce platform with over 95 physical retail locations globally.[3]

22.   Fabletics CEO Adam Goldenberg announced on January 13, 2026, that the company surpassed $1 billion in annual sales, achieved 18 percent growth in 2025, and recorded over 25 percent growth in the fourth quarter.[4]

23.   Fabletics manufactures most if not all products outside of the United States in places such as Asia, including China, which is a major hub for the brand's manufacturing activities.[5]

**B.   THE IEEPA TARIFFS**

24.   Beginning in February 2025, President Trump invoked the IEEPA to impose tariffs on imports from numerous foreign countries pursuant to a series of

---

[1] *Fabletics – About Us,* https://www.fabletics.com/about (last visited April 24, 2026).
[2] *Id.*
[3] *Id.*
[4] *Report: Fabletics Surpasses $1 Billion in Revenue, Focuses on Growth of VIP Membership,* https://sgbonline.com/report-fabletics-surpasses-1-billion-in-revenue-focuses-on-growth-of-vip-membership/ (last visited April 24, 2026).
[5] *Exploring Fabletics: Popularity, Materials, and Manufacturing*, https://modaknits.com/fabletics-shorts/(last visited April 24, 2026).

-5-

PLAINTIFFS' CLASS ACTION COMPLAINT FOR DAMAGES

executive orders declaring national emergencies related to trade and supply chain concerns.[6]

25. Those executive orders imposed sweeping tariffs on imports from key U.S. trading partners. The orders included duties of approximately 25 percent on many imports from Canada and Mexico and additional tariffs on imports from China that were layered on top of existing duties, resulting in substantially higher effective tariff rates on Chinese goods.[7]

26. The tariffs significantly increased the cost of imported consumer goods entering the United States, particularly for retailers and other businesses that rely heavily on international supply chains to source merchandise—like Defendant Fabletics.[8]

27. Under U.S. customs law, the importer of record is responsible for paying tariffs when goods enter the United States. Accordingly, importers of record—including major retailers such as Fabletics—were required to pay the IEEPA tariffs to U.S. CBP upon entry of covered merchandise into the country.[9]

---

[6] *See* Exec. Order No. 14194, *Imposing Duties To Address the Situation at Our Southern Border*, 90 Fed. Reg. 9,117 (Feb. 7, 2025); Exec. Order No. 14193, *Imposing Duties To Address the Flow of Illicit Drugs Across Our Northern Border*, 90 Fed. Reg. 9,113 (Feb. 7, 2025); Exec. Order No. 14195, *Imposing Duties To Address the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 9,121 (Feb. 7, 2025).

[7] *See* Reuters, *Trump Orders Tariffs on Canada, Mexico and China*, Feb. 1, 2025.

[8] *See* Mary Amiti, Stephen J. Redding & David Weinstein, *The Impact of the 2018–2019 Tariffs on Prices and Welfare*, 135 J. Econ. Persp. 187 (2020)

[9] *See* U.S. Customs & Border Prot., *Importing Into the United States: A Guide for Commercial Importers*.

-6-

PLAINTIFFS' CLASS ACTION COMPLAINT FOR DAMAGES

28.     Numerous importers challenged the legality of the IEEPA tariffs in the United States Court of International Trade, arguing that the President lacked statutory authority under IEEPA to impose tariffs of that nature.[10]

29.     On February 20, 2026, the Supreme Court of the United States held that the challenged tariff regime was unlawful and that IEEPA does not authorize the President to impose tariffs of the type challenged in that litigation and invalidated the tariff orders issued pursuant to that statute.[11]

30.     The Supreme Court's decision effectively eliminated the legal basis for the IEEPA tariffs and created a pathway for importers that had paid those duties—including large retailers like Fabletics—to seek refunds of the tariffs previously collected by the federal government.

## C.     TARIFFS ARE ECONOMICALLY BORNE BY CONSUMERS

31.     Economists and government agencies widely recognize that tariffs are largely borne by domestic consumers rather than foreign exporters or the importing firms that formally remit the duties.

32.     Economic studies examining recent U.S. tariff regimes consistently find that the cost of tariffs is passed through into higher prices paid by U.S. purchasers of imported goods.[12]

33.     When tariffs increase the cost of imported goods, retailers and other downstream sellers typically raise prices to offset those additional costs. Surveys of U.S. businesses conducted by the Federal Reserve Bank of New York during the recent tariff period found that a large majority of companies facing tariff-related

---

[10] *See* Reuters, *Businesses Sue Over Trump's Tariffs*, Apr. 2025.

[11] *See Learning Res., Inc. v. Trump*, 607 U.S. ___ (2026)

[12] *See* Julian Hinz et al., *America's Own Goal: Who Pays the Tariffs?*, Kiel Inst. for the World Econ. Policy Brief (Jan. 19, 2026); see also Mary Amiti, Stephen J. Redding & David Weinstein, *The Impact of the 2018–2019 Tariffs on Prices and Welfare*, 135 J. Econ. Persp. 187 (2020)

PLAINTIFFS' CLASS ACTION COMPLAINT FOR DAMAGES

cost increases passed at least some portion of those costs through to their customers in the form of higher prices.[13] Companies consider tariffs to be costs that are to be incorporated into the pricing structure.

34. Fabletics followed this same pattern during the tariff period. As a major importer of consumer goods, Fabletics faced increased costs resulting from tariffs on its products and took steps to address those cost pressures through pricing and merchandising decisions.

35. Indeed, as detailed below, Fabletics executives publicly acknowledged that tariffs would affect pricing decisions and the company's cost structure. In a statement, Fabletics said, "We implemented a clearly labeled tariff surcharge at checkout to be transparent with consumers and ensure we can continue providing the highest-quality products at the most competitive prices. The surcharge only partially covers our cost increases but we felt it was important to not pass the full burden of cost on to our consumers. While the Supreme Court ruling is an important development, tariffs remain in place and there are still many outstanding questions regarding implementation and potential refunds that we are closely monitoring."[14]

36. As a result, consumers who purchased goods from Fabletics during the tariff period paid elevated prices reflecting the tariff-related cost increases incorporated into Fabletics' retail pricing. Each customer receipt showed a clear tariff surcharge.

---

[13] *See* Jaison R. Abel, Richard Deitz & Jason Bram, *Are Businesses Absorbing the Tariffs or Passing Them On to Their Customers?*, Fed. Rsrv. Bank of N.Y., Liberty Street Econ. (June 4, 2025), available at https://libertystreeteconomics.newyorkfed.org.)
[14] *Tariffs cost American shoppers. They're unlikely to get that money back,* https://www.opb.org/article/2026/02/26/ tariffs-cost-american-shoppers-theyre-unlikely-to-get-that-money-back/ (last visited April 24, 2026).

-8-

PLAINTIFFS' CLASS ACTION COMPLAINT FOR DAMAGES

37. Fabletics' public statements and actions thus confirmed two critical points: first, that tariffs were increasing Fabletics' costs on imported goods; and second, that Fabletics was making pricing decisions in direct response to those tariff-driven cost increases.

38. These public admissions are consistent with Fabletics' broader financial disclosures during the Class Period. Fabletics reported strong financials while simultaneously acknowledging tariff pressures and raising prices due to tariffs. Fabletics did not simply absorb the full cost of the unlawful tariffs; rather, Fabletics passed on at least part of those costs to consumers through higher retail prices.

39. Fabletics' own public statements and actions therefore establish a coherent timeline: Fabletics acknowledged tariff-driven cost increases and Fabletics selectively increased prices on affected goods during the tariff period.

40. Plaintiffs and Class members paid tariff-inflated prices at Fabletics during the Class Period, while Fabletics now seeks to retain both the consumer pass-through and any government refund of the same unlawful tariff charges.

## D.　TARIFFS INVALIDED BY SCOTUS

41. As described above, in February 2026, the Supreme Court held that the President's tariff regime exceeded the statutory authority granted by IEEPA and invalidated the challenged tariff orders.[15] Following the SCOTUS decision, importers that had paid IEEPA tariffs—including Fabletics—became eligible to pursue refunds of those duties.

42. On March 4, 2026, the Court of International Trade, in *Atmus Filtration, Inc. v. United States*, ordered U.S. CBP to stop liquidating IEEPA duties and to reliquidate previously liquidated IEEPA duties where possible, and indicated

---

[15] *See Learning Res., Inc. v. Trump*, 607 U.S. ___ (2026).

PLAINTIFFS' CLASS ACTION COMPLAINT FOR DAMAGES

that the relief extended to "all importers of record" that paid IEEPA duties, including importers that had not filed their own refund suits.[16]

43.     The potential refund pool resulting from the invalidation of the IEEPA tariffs is enormous. Public reporting concerning the refund proceedings states that U.S. CBP estimated an "unprecedented volume of refunds," potentially involving 53,173,939 refunds across 330,566 importers if each entry subject to IEEPA duties is entitled to a refund.[17]

44.     Fabletics is among the country's largest importers of consumer goods and therefore stands to recover substantial sums if tariff refunds are paid.

45.     Given Fabletics' scale as a major importer, Fabletics can expect to recover significant tariff refunds corresponding to duties it paid during the Class Period. Those expected refunds are especially significant here because Fabletics previously passed tariff-related cost increases through to consumers in the form of higher retail prices, meaning Fabletics now seeks to recover from the government duties whose economic burden was borne, in whole or in part, by the Plaintiffs and Class members.

46.     In practical terms, Fabletics stands to receive a windfall: it has already recouped tariff costs from consumers through tariff surcharges, and it now stands in line to recover those same unlawful tariff payments from the federal government.

E.     **PLAINTIFF ROBERT BRODBECK'S EXPERIENCE**

47.     Plaintiff Robert Brodbeck is a Fabletics customer and has a Fabletics membership.

---

[16] *See Atmus Filtration, Inc. v. United States*, No. 26-01259, (Ct. Int'l Trade Mar. 4, 2026), ECF No. 21.

[17] *See* Thompson Hine LLP, *CIT Suspends Earlier Order Directing IEEPA Tariff Refunds* (Mar. 6, 2026), https://www.thompsonhinesmartrade.com/2026/03/cit-suspends-earlier-order-directing-ieepa-tariff-refunds/.)

-10-

PLAINTIFFS' CLASS ACTION COMPLAINT FOR DAMAGES

48. Plaintiff Brodbeck made several purchases during the Class period where he was charged a tariff surcharge, as illustrated by the below invoices:



PLAINTIFFS' CLASS ACTION COMPLAINT FOR DAMAGES

49.    Plaintiff Brodbeck is entitled to a Refund of all the tariff surcharges, plus interest, he paid to Fabletics.

## F.    PLAINTIFF AJANI HOFFERT'S EXPERIENCE

50.    Plaintiff Ajani Hoffert is a Fabletics customer and has a Fabletics membership.

51.    Plaintiff Hoffert made several purchases during the Class period where he was charged a tariff surcharge, as illustrated by the invoice below:

**ORDER #: 1734881530**
**Order Date: 02/03/2026**



**Cozy Fleece Full Zip Hoodie**

SIZE: M
COLOR: HOLLY BERRY
QTY: 1
1 TOKEN APPLIED



**Seamless Scrunch High-Waisted Legging**

SIZE: M / Short | 25
COLOR: HOLLY BERRY
QTY: 1
1 TOKEN APPLIED



**Oasis Twist Medium Impact Sports Bra**

SIZE: M
COLOR: EVERPINE
QTY: 1
1 TOKEN APPLIED

**ORDER SUMMARY**

| | |
|---|---|
| TARIFFS: | $11.85 |
| SUBTOTAL: | $209.85 |
| MEMBER TOKEN(S): | 3 |
| TAX: | $17.19 |
| TOTAL: | $29.04 |

-12-
PLAINTIFFS' CLASS ACTION COMPLAINT FOR DAMAGES

52.     Plaintiff Hoffert is entitled to a refund of all the tariff surcharges, plus interest, she paid to Fabletics.

## CLASS ALLEGATIONS

53.     A class action is the proper forum to bring Plaintiffs' claims under FRCP 23. The potential Class is so large that joinder of all members would be impracticable. Additionally, there are questions of law or fact common to the Class, the claims or defenses of the representative parties are typical of the claims or defenses of the Class, and the representative parties will fairly and adequately protect the interests of the Class.

54.     This action satisfies all of the implicit and explicit requirements of FRCP, including numerosity, commonality, typicality, adequacy, predominance and superiority.

55.     **Numerosity**: the Class is so numerous that joinder of all members is impracticable.  While the exact number is not known at this time, it is generally ascertainable by appropriate discovery.  Given the consumer base of Fabletics, the class numbers in the hundreds of thousands or millions of consumers.

56.     **Commonality:** the claims made by Plaintiffs meet the commonality requirement because they present shared questions of law and fact, and resolving these questions will resolve the classwide litigation. These shared questions predominate over individual questions, and they include, without limitation:

a.  whether Fabletics paid tariffs imposed under the International Emergency Economic Powers Act ("IEEPA") on imported goods during the Class Period;

b.  whether Fabletics increased retail prices on goods sold to consumers in response to those tariffs;

-13-
PLAINTIFFS' CLASS ACTION COMPLAINT FOR DAMAGES

c. whether Fabletics passed through some or all of the tariff costs to consumers through higher prices;

d. whether Fabletics sought or will seek refunds of those tariffs from the federal government;

e. whether Fabletics' retention of tariff refunds corresponding to tariff costs paid by consumers constitutes unjust enrichment;

f. whether Fabletics' conduct was unfair under applicable consumer protection laws; and

g. the appropriate measure of restitution, damages, or other relief resulting from Fabletics' conduct.

57. **Typicality**: Plaintiffs' claims are typical of those of the other Class members because Plaintiffs, like every other Class member, bought products from Fabletics subject to tariff related price increases.

58. The claims of the Class Representative Plaintiff are furthermore typical of other Class members because he makes the same claims as other Class members. Plaintiffs have an interest in seeking compensation from Defendant.

59. **Adequacy**: Plaintiffs will fairly and adequately represent and protect the interests of the Class in that they have no disabling conflicts of interest that would be antagonistic to those of the other members of the Class. Plaintiffs seek no relief that is antagonistic or adverse to the members of the Class and the infringement of the rights and the damages they have suffered are typical of other Class members.

60. **Superiority:** The class litigation is an appropriate method for fair and efficient adjudication of the claims involved. Class action treatment is superior to all other available methods for the fair and efficient adjudication of the controversy alleged herein; it will permit a large number of class members to prosecute their

-14-
PLAINTIFFS' CLASS ACTION COMPLAINT FOR DAMAGES

common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort and expense that hundreds of individual actions would require. Class action treatment will permit the adjudication of relatively modest claims by certain class members, who could not individually afford to litigate a complex claim against large corporate defendants. Further, even for those class members who could afford to litigate such a claim, it would still be economically impractical.

61. The nature of this action and the nature of laws available to Plaintiffs and the Class makes the use of the class action device a particularly efficient and appropriate procedure to afford relief to Plaintiffs and the Class for the wrongs alleged. Without the class action mechanism, Defendant would necessarily gain an unconscionable advantage since they would be able to exploit and overwhelm the limited resources of each individual Class member with superior financial and legal resources; and the costs of individual suits could unreasonably consume the amounts that would be recovered. Likewise, proof of a common course of conduct to which Plaintiffs were exposed is representative of that experienced by the Class, and will establish the right of each member of the Class to recover on the cause of action alleged; and Individual actions would create a risk of inconsistent results and would be unnecessary and duplicative of this litigation.

62. The proposed National Class is described as follows:

> All persons in the United States who purchased goods from Fabletics during the period February 1, 2025, through February 24, 2026, in which Fabletics imposed a tariff surcharge.

63. The proposed California Class is described as follows:

-15-

PLAINTIFFS' CLASS ACTION COMPLAINT FOR DAMAGES

All persons in California who purchased goods from Fabletics during the period February 1, 2025, through February 24, 2026, in which Fabletics imposed a tariff surcharge.

64.     Plaintiffs reserve the right to modify or amend the definition of the proposed class and to modify, amend or remove proposed subclasses, before the Court determines whether certification is appropriate and as the parties engage in discovery.

65.     Plaintiffs will fairly and adequately protect the interests of the Class. The interests of the class representative are consistent with those of the other members of the Class. In addition, Plaintiffs are represented by experienced and able counsel who have expertise in the areas of tort law, trial practice, and class action representation.

66.     The class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Because of the number and nature of common questions of fact and law, multiple separate lawsuits would not serve the interest of judicial economy.

67.     Excluded from the Class are:

a.      Defendant and any entities in which Defendant has a controlling interest;

b.      Any entities in which Defendant's officers, directors, or employees are employed and any of the legal representatives, heirs, successors, or assigns of Defendant;

c.      The Judge to whom this case is assigned and any member of the Judge's immediate family and any other judicial officer assigned to this case;

-16-

PLAINTIFFS' CLASS ACTION COMPLAINT FOR DAMAGES

d.      All persons or entities that properly execute and timely file a request for exclusion from the Class; and

e.      Any attorneys representing the Plaintiffs or the Class.

## CLAIMS FOR RELIEF

### COUNT I
### Unjust Enrichment
### (On behalf of Plaintiffs and the Class)

68.      Plaintiffs incorporate by reference the foregoing allegations as if fully set forth herein.

69.      Plaintiffs and the Class have conferred a benefit upon Defendant in the form of the money Defendant received from them through tariff surcharges on goods during the period February 1, 2025, through February 24, 2026.

70.      Defendant appreciates and/or has knowledge of the benefits conferred upon it by Plaintiffs and the Class.

71.      Under principles of equity and good conscience, Defendant should not be permitted to retain the amount of the tariff surcharges obtained from Plaintiffs and the members of the Class, which Defendant has unjustly obtained as a result of its price increases on goods subject to unlawful tariffs. As it stands, Defendant has retained profits generated from its sales of products subject to tariff-related price increases and should not be permitted to retain those ill-gotten profits when it is seeking a refund of the duties it paid.

72.      Accordingly, Plaintiffs and the Class seek full disgorgement and restitution of any money Defendant has retained as a result of the unlawful and/or wrongful conduct alleged herein.

## COUNT II
### Money Had and Received
### (On behalf of Plaintiffs and the Class)

73. Plaintiffs incorporate by reference the foregoing allegations as if fully set forth herein.

74. Plaintiffs allege this claim individually and on behalf of the proposed class.

75. Defendant received money from Plaintiffs and from each member of the proposed Class in the form of a tariff surcharge. The Supreme Court has determined that the tariffs were unlawful.

76. The money belonged to Plaintiffs and to each member of the proposed Class.

77. Defendant has not returned the money.

78. It will give offense to equity and good conscience if Defendant is permitted to retain the tariff surcharge. Plaintiffs seeks the return of the money in an amount to be proven at trial.

79. Plaintiffs seek all remedies available under the law, including, if available, actual damages, nominal damages, compensatory damages, punitive damages, and injunctive relief, and other remedies available to him.

## COUNT III
### Violation of California's Unfair Competition Law ("UCL")
### Cal Bus. & Prof. Code § 17200, *et seq.*
### ((On behalf of Plaintiff Hoffert and the California Class)

80. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

81. Defendant engaged in unlawful and unfair business practices in violation of Cal. Bus. & Prof. Code § 17200, *et seq*. which prohibits unlawful, unfair, or fraudulent business acts or practices ("UCL").

82. California Business & Professions Code Section 17200 prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising."

83. Fabletics acted with knowledge and intent.

84. Defendant's conduct is an unfair business practice under the UCL because it was immoral, unethical, oppressive, and unscrupulous and caused substantial harm. Fabletics engaged in unfair and deceptive acts by: (i) charging customers a tariff surcharge; and (ii) retaining tariff refunds despite having passed the costs to its customers.

85. Fabletic's conduct also constitutes "unfair" business acts and practices within the meaning of the UCL, in that its conduct was injurious to consumers, offended public policy, and was unethical and unscrupulous. Fabletic's violation of consumer protection and unfair competition laws resulted in harm to consumers.

86. Defendant's wrongful conduct occurred in the conduct of trade or commerce—*i.e.*, while Defendant was engaged in sales nationwide.

87. Defendant has profited immensely from its unlawful conduct.

PLAINTIFFS' CLASS ACTION COMPLAINT FOR DAMAGES

88.     As a result of Defendant's conduct, Plaintiff and the Class members were injured in their business or property—i.e., economic injury—in that they paid inflated prices for goods subject to tariffs.

89.     As described throughout this Complaint, Defendant's conduct (1) caused substantial injury that is (2) not reasonably avoidable by consumers and that (3) is not outweighed by the benefits to consumers or competition.

90.     Defendant's unfair or deceptive conduct proximately caused Plaintiff's and the Class members' injury because, but for the challenged conduct, Plaintiff and the Class members would not have paid inflated prices for goods subject to tariffs and they did so as a direct, foreseeable, and planned consequence of that conduct.

91.     The injuries to Plaintiff and the Class greatly outweigh any alleged countervailing benefit to consumers or competition under all of the circumstances.

92.     There were reasonably available alternatives to further Defendant's legitimate business interests, other than the misconduct alleged in this complaint.

93.     Therefore, Plaintiff and the Class are entitled to equitable relief, including restitution of all monies paid to or received by Defendant; disgorgement of all profits accruing to Defendant because of its unfair and improper business practices; a permanent injunction enjoining Defendant's unlawful and unfair business activities; and any other equitable relief the Court deems proper.

## COUNT IV
### Violation of California's Consumers Legal Remedies Act ("CLRA")
### Cal. Civ. Code §§ 1750, et seq.
### (On behalf of Plaintiff Hoffert and the Class)

94. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

95. Fabletics is a "person" as defined by California Civil Code § 1761(c).

96. The California Plaintiff and the other California class members are "consumers" within the meaning of California Civil Code § 1761(d).

97. For the reasons alleged above, Fabletics violated California Civil Code § 1770(a)(5)(7) and (9).

98. Fabletics's unfair and deceptive acts or practices occurred repeatedly in Fabletics's trade or business.

99. Fabletics acted with knowledge and intent.

100. Fabletics engaged in conduct that had the tendency or capacity to deceive or confuse reasonable consumers.

101. With respect to restitution under the CLRA claim, there is no adequate remedy at law for the reasons already alleged above.

102. As a result of Fabletics's misconduct, the Plaintiff and other Class members have suffered monetary harm.

103. Plaintiff seeks all relief available under this cause of action.

## COUNT V
### Declaratory Relief, 28 U.S.C. § 2201
### (On behalf of Plaintiffs and the Class)

104. Plaintiffs incorporates the foregoing allegations as if fully set forth herein.

105. Plaintiffs alleges this claim individually and on behalf of the proposed Class.

-21-
PLAINTIFFS' CLASS ACTION COMPLAINT FOR DAMAGES

106. Federal courts have the power "to declare the rights and other legal relations of any interested party seeking such a declaration." 28 U.S.C. § 2201(a).

107. Plaintiffs' claims present an actual controversy as to the rightful ownership of the tariff surcharges paid to Defendant.

108. Plaintiffs have suffered an injury by having been required to pay Defendant a tariff surcharge because of the subject tariffs on Defendant's product. And Plaintiffs will imminently suffer an injury by Defendant's unlawful retention of the tariff refund.

109. This Court can exercise its equitable power to enter a declaratory judgment that retention of the tariff surcharges paid by Plaintiffs but refunded to Defendant is unlawful for any of the above reasons.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff and members of the proposed class pray for relief and judgment against Defendant, as follows:

a. For an order certifying the proposed classes, appointing Plaintiffs and their counsel to represent the proposed class and notice to the proposed classes to be paid by Defendant;

b. For damages suffered by Plaintiffs and members of the proposed class;

c. For restitution to Plaintiffs and the proposed class of all monies wrongfully obtained by Defendant;

d. For injunctive relief requiring Defendant to cease and desist from engaging in the unlawful, unfair, and/or deceptive practices alleged in the Complaint;

e. An order awarding declaratory relief, retrospective and prospective injunctive relief as permitted by law or equity, including enjoining

-22-
PLAINTIFFS' CLASS ACTION COMPLAINT FOR DAMAGES

Defendant from continuing the unlawful practices as set forth herein, and injunctive relief to remedy Defendant's past conduct;

f.   For Plaintiffs' reasonable attorneys' fees, as permitted by law;

g.   For Plaintiffs' costs incurred;

h.   For pre-judgment and post-judgment interest at the maximum allowable rate on any amounts awarded; and

i.   For such other and further relief that this Court deems just and proper under equity or law, including the award of punitive damages.

## **DEMAND FOR JURY**

Plaintiffs, individually and on behalf of the proposed Class, demands a trial by jury for all the claims asserted in this Complaint so triable.

DATED: April 27, 2026                    Respectfully submitted,

By: */s/ M. Anderson Berry*
     M. Anderson Berry (SBN 262879)
     Gregory Haroutunian (SBN 330263)
     Brandon P. Jack (SBN 325584)
     **EMERY REDDY, PC**
     600 Stewart Street, Suite 1100
     Seattle, WA 98101
     Phone: 916.823.6955
     *anderson@emeryreddy.com*
     *gregory@emeryreddy.com*
     *brandon@emeryreddy.com*

     Jason T. Dennett*
     **MILBERG, PLLC**
     1700 7th Ave, Suite 2100
     Seattle, WA 98101
     Telephone: (516) 515-9124
     *jdennett@milberg.com*

     Gary M. Klinger*
     **MILBERG, PLLC**
     227 W. Monroe Street, Suite 2100
     Chicago, IL 60606

-23-

PLAINTIFFS' CLASS ACTION COMPLAINT FOR DAMAGES

Telephone: 866.252.0878
*gklinger@milberg.com*

Terence R. Coates*
Jonathan T. Deters*
**MARKOVITS, STOCK
& DEMARCO, LLC**
119 E. Court Street, Suite 530
Cincinnati, OH 45202
Telephone: (513) 651-3700
*tcoates@msdlegal.com*
*jdeters@msdlegal.com*

Zachary Arbitman*
Nicole A. Maruzzi*
**FELDMAN SHEPHERD
WOHLGELERNTER TANNER
WEINSTOCK & DODIG, LLP**
1845 Walnut Street, 21st Floor
Philadelphia, PA 19103
Telephone: (215) 567-8300
*zarbitman@feldmanshepherd.com*
*nmaruzzi@feldmanshepherd.com*

*Counsel for Plaintiffs*

**Pro Hac Vice* applications
forthcoming